UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNE PAULINE MARKARDT, | : | |
| Plaintiff | : | No. 3:11-CV-2106 |
| vs. | : | (Complaint Filed 11/10/11) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SOCIAL SECURITY, | : | (Judge Munley) |
| Defendant | : | |

**MEMORANDUM**

**Background**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Anne Pauline Markardt's claim for social security disability insurance benefits.

Markardt protectively filed[1] her application for disability insurance benefits on October 6, 2008. Tr. 10, 64, 85-87 and 93.[2] The application was initially denied by the Bureau of Disability Determination on January 15, 2009.[3] Tr. 65-68. On

---

1. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

2. References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of her Answer on January 19, 2012.

3. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 65.

March 9, 2009, Markardt requested an administrative hearing. Tr. 69.  After about 12 months had passed, a hearing was held before an administrative law judge on March 8, 2010. Tr. 22-44.  On June 30, 2010, the administrative law judge issued a decision denying Markardt's application. Tr. 10-18.  On July 28, 2010, Markardt filed a request for review with the Appeals Council. Tr. 5-6.  After a little over 13 months had passed, the Appeals Council concluded that there was no basis upon which to grant Markardt's request for review. Tr. 1-4.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Markardt then filed a complaint in this court on November 10, 2011.  Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on April 13, 2012, when Markardt elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Markardt met the insured status requirements of the Social Security Act through June 30, 2009. Tr. 10, 12, 108 and 113.  In order to establish entitlement to disability

---

4. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

2

insurance benefits Markardt was required to establish that she suffered from a disability on or before that date. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a)(2008); see <u>Matullo v. Bowen</u>, 926 F.2d 240, 244 (3d Cir. 1990).

Markardt, who was born in the United States on July 21, 1963,[5] obtained a General Equivalency Diploma in 1980,[6] and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 85, 90, 116, 121 and 125. During her schooling, Markardt attended regular education classes. Tr. 121. After obtaining a GED, Markardt completed no additional schooling or training. <u>Id.</u> Markardt has a driver's license and drives short distances "three times a week." Tr. 38. Markardt drove herself to the administrative hearing from Hawley, Pennsylvania, to Wilkes-Barre which "was probably the longest drive" she had "taken in awhile."[7] Tr. 10, 38, 40 and 138.

Markardt held two jobs which can be considered past

---

5. At the time of the administrative hearing and the administrative law judge's decision, Markardt was 46 years of age and considered a "younger individual" whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. § 404.1563(c). The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

6. The record does not reveal the year or what grade Markardt was attending when she withdrew from school.

7. A round-trip drive between Hawley and Wilkes-Barre is approximately 114 miles. See distancebetweencities, http://www.distancebetweencities.net/hawley_pa_and_wilkes-barre_pa/ (Last accessed April 9, 2013).

relevant employment.[8] Those positions were as a hotel housekeeper described by a vocational expert as unskilled, heavy work, and as a retail manager which was described as skilled, light work as generally performed in the economy but medium work as actually performed by Markardt because the business was a bicycle store, World of Ace Cycles, Inc.[9] Tr. 40, 96-100, 118 and

---

8. Past relevant employment in the present case means work performed by Markardt during the 15 years prior to the date her claim for disability benefits was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

9. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> (c) *Medium work*. Medium work involves lifting no more

4

126. Markardt reported that she worked as a retail manager for the bicycle store from 1987 to 2001 and as a housekeeper from July, 2005 to August, 2007. Tr. 118. The record, however, also reveals she received earnings from World of Ace Cycles, Inc, in 2002. Tr. 99. In addition to performing work as a retail manager and housekeeper, Markardt worked as a program analyst for a publishing company from 1983 to 1986. Tr. 126.

Records of the Social Security Administration reveal that Markardt had earnings in the years 1979 through 1987, 1991, 1992, 1994 through 2000, 2002 and 2005 through 2007. Tr. 110. Markardt's highest annual earnings were when she was employed as a retail manager during the years 1994 through 1999. Id. During each of those years Markardt annual earnings exceeded $23,400.00. Id. Markardt's total reported earnings from 1979 through 2007 were $263,811.77. Id. Markardt has no reported earnings after 2007. Id.

Markardt claims that she became disabled on August 12, 2007, because of "damaged ribs" and the constant pain associated

---

> than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.
>
> (d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567.

5

with that condition. Tr. 117 and 133. The impetus for Markardt's alleged disabling condition was an injury she sustained while working as a housekeeper. Tr. 133. She claims she "fell because of an object that someone left on [] steps." Id. Markardt alleges that she can not sit, stand or walk for long periods of time and that she is unable to "bend or stretch." Tr. 117. Markardt at the administrative hearing described her pain as follows: "I have it in the mid-back on the left side – everything's on the left side[10] – and then it'll shoot up to my shoulder and down to my left butt cheek and then I'll – from time to time I'll get numbness in my fingers and my toes like they're falling asleep. And in my neck." Tr. 28-29.

In a "Function Report - Adult" submitted during the administrative proceedings, Markardt indicated that she performed a range of daily activities. Tr. 123-138. Markardt lived with her husband and daughter. Id. She stated that she had no problem with her personal care other than that putting on underwear, socks and pants causes pain; she can not use a bathtub but only a shower; her daughter helps with her hair when she feels sore; and she has difficulty bending to shave her legs. Tr. 124. Her responsibilities include taking care of her husband and daughter, making complete meals each day, and feeding her dog. Tr. 123-124. She reported grocery shopping once every couple of weeks for 3 ½ hours. Tr. 125. Markardt indicated that she attempted to do daily chores on a "good

---

10. Markardt is right-handed. Tr. 136.

6

day" such as making beds, loading the dishwasher, doing laundry, and doing light bathroom cleaning. Tr. 123. She stated that she spends a lot of time watching television and trying to get comfortable. Id. Markardt reported that she could lift up to 20 pounds "but not long" and "only bend slowly;" she can stand 20 minutes at a time and walk "only 20 to 30 min[utes];" and she cannot sit longer than 30 minutes without shifting her body for comfort. Tr. 136. In the "Function Report," Markardt when asked to check items which her "illnesses, injuries, or conditions affect" did <u>not</u> check kneeling, talking, hearing, seeing, memory, concentration, understanding, following instructions, using hands and getting along with others. Id.

For the reasons set forth below we will affirm the decision of the Commissioner denying Markardt's application for disability insurance benefits.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g);

Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and

"must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with

9

respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[11] (2) has an impairment that is severe or a combination of impairments that is severe,[12] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[13] (4) has the residual

---

[11]. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[12]. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

[13]. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to

functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[14]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**MEDICAL RECORDS**

Before we address the administrative law judge's decision and the arguments of counsel, we will review some of the medical records.

---

prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

14. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

The record reveals that Markardt sustained a twisting-type injury to the thoracic region of the spine while engaging in heavy work as a housekeeper on August 12, 2007. Tr. 195. However, when Markardt was examined by Paul P. Vessa, M.D., a treating physician on May 19, 2008, it was observed that Markardt was alert and oriented, moved about the room with only a slightly antalgic gait, and was easily able to get on and off the examination table. Tr. 196. With deep breathing, Markardt did complain of pain radiating down to the lower thoracic spine region at the level of the rib head. Id. An examination of the lumbar spine revealed normal range of motion. Id. In fact Markardt had 100% flexion, extension, and right and left lateral bending. Id. She had no tenderness with extension or rotation. Id. She had full range of motion of the ankles, knees and hips; she was able to heel and toe walk;[15] she had completely normal motor strength; she had a negative straight leg

---

15. The heel walk test requires the patient to walk on his or her heels. The inability to do so suggests L4-L5 nerve root irritation. The toe walk test requires the patient to walk on his or her toes. The inability to do so suggests L5-S1 nerve root irritation. Clinical Examination Terminology, MLS Group of Companies, Inc., https://www.mls-ime.com/articles/GeneralTopics/Clinical%20Examination%20Terminology.html (Last accessed April 5, 2013).

raising testing;[16] she had a negative femoral stretch test;[17] she had no muscle atrophy; a sensory examination of the lower extremities was normal; her deep tendon reflexes were normal and symmetric; she was neurovascularly intact; she had a negative Romberg sign;[18] and pulses were present bilaterally. Id. Dr. Vessa reviewed an MRI of the thoracic spine and noted that it revealed a hemangioma[19] in the vertebral body of Thoracic 8 on the right side but that he did not believe it was "in any way the source of her overall discomfort."

---

16. The straight leg raise test is done to determine whether a patient with low back pain has an underlying herniated disc. The patient, either lying or sitting with the knee straight, has his or her leg lifted. The test is positive if pain is produced between 30 and 70 degrees. Niccola V. Hawkinson, DNP, RN, Testing for Herniated Discs: Straight Leg Raise, SpineUniverse, http://www.spineuniverse.com/experts/testing-herniated-discs-straight-leg-raise (Last accessed April 4, 2013).

17. A positive femoral stretch test is indicative of a herniated disc or nerve root impingement. See WebMD, Back Pain Health Center,http://www.webmd.com/back-pain/medical-history-and-physical-exam-for-a-herniated-disc (Last accessed April 8, 2013). As stated Markardt's test was negative.

18. Romberg test is a neurological test to detect poor balance. It detects the inability to maintain a steady standing posture with the eyes closed. See Dorland's Illustrated Medical Dictionary, 1715 (32nd Ed. 2012).

19. "A spinal hemangioma is a primary, benign tumor most common in the thoracic and lumbar spine. This type of tumor typically affects the vertebral body, but also can affect muscles. The tumor has few symptoms, and is often found on examination for another condition." Scoliosis & Spine Associates, Spinal Tumors, http://www.scoliosisassociates.com/subject.php?pn=spinal-tumors-012 (Last accessed April 5, 2013). A vertebra consists of several elements, including the vertebral body (which is the anterior portion of the vertebra), pedicles, laminae and the transverse processes. The vertebral body which is a hard bony structure is the largest part of the vertebra and is somewhat oval shaped.

Tr. 197.  The only observations that Dr. Vessa recorded which depicted a physical problem were that Markardt had tenderness in the left trapeziuz region to direct touch, tenderness over the rib head of Thoracic 9 and some mild sciatic notch tenderness. Tr. 196.  Dr. Vessa's impression was that Markardt suffered from "[c]ostra vertebral syndrom[e], left T9, Status post sterotomy in her 20's with recent twisting injury and direct trauma to the rib head." Tr. 197.

Over the course of several months, Dr. Vessa administered several injections to the rib/thoracic joints at the T9, T10, T11 and T12 levels. Tr. 191-194.

Markardt also received pain management at Northeastern Rehabilitation Associates, P.C., in Scranton. Tr. 210-211.

On October 14, 2009, based on a referral from Dr. Vessa, Markardt underwent a functional capacity evaluation (FCE) at Northeastern Rehabilitation Associates.  Tr. 294-316.  The results of this evaluation were inconclusive. Id.  They did not give an indication of her ability to engage in work. Id.  Notably, Dr. Vessa admitted that the FCE was inconclusive and did not provide a specific indication of Markardt's functional abilities during a deposition on January 19, 2009, related to Markardt's state workmen's compensation proceeding.  Id.  In the report of the FCE it was noted that the results suggested "a high degree of symptoms, disability exaggeration." Tr. 295.

Dr. Vessa never provided a detailed functional capacity assessment of Markardt setting forth her ability or inability to

engage in the physical requirements of sedentary, light, medium, heavy or very heavy work. Dr. Vessa's deposition testimony merely suggests that he felt that she could not engage in the work she was doing at the time of her injury on August 12, 2007, which was heavy work as a housekeeper.

On January 8, 2009, Leo P. Potera, M.D., reviewed Markardt's medical records on behalf of the Bureau of Disability Determination. Tr. 240-245. Based on his review of the record, Dr. Potera concluded that Markardt could perform a limited range of light work. Id. Markardt could engage in postural activities, such as balancing, stooping, kneeling and crouching on an occasional basis; she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazardous machinery and heights; and she had no manipulative, visual or communicative limitations. Id.

A physical examination of Markardt performed on January 6, 2010, at Northeastern Rehabilitation Associates by Sheryl Oleski, D.O., a treating physician, revealed the following: "The patient has a reciprocal gait pattern.[20] She has 5/5 strength throughout the hip flexors, knee extensors, ankle dorsiflexors, invertors and evertors. Sensation is grossly intact to light touch and there is no evidence of atrophy or fasciculations (muscle twitches). Sitting

---

20. A reciprocal gait pattern is normal. Such a pattern is where when walking there is alternating movement of the legs.

slump test is negative.[21] Sacroiliac joint maneuvers remain mildly positive on the left and there is tenderness over the sacroiliac joint. There is left mid and thoracic paraspinal spasm. There is some discomfort with palpation over the left sided ribs, as well as with [posterior anterior] glide[22] throughout the mid and lower thoracic spine." Tr. 326.

No treating or examining physician provided a statement indicating that Markardt was disabled on or prior to her date last insured of June 30, 2009.

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Markardt had not engaged in substantial gainful work activity since August 12, 2007, the alleged disability onset date through the date last insured of June 30, 2009. Tr. 12.

At step two of the sequential evaluation process, the administrative law judge found that Markardt had the following severe impairments: "left costochondral pain with possible intercostal nerve pain in the lower left ribs." Id.

At step three of the sequential evaluation process the administrative law judge found that Markardt's impairments did not

---

21. The sitting slump test is used to diagnose the source of low back pain. It is used to see if there is a disc herniation causing a pinched sciatic nerve.

22. This is a test where the physician applies spring-like pressure down through the spine. The idea is to look for too much or too little mobility at the various levels of the spine.

16

individually or in combination meet or equal a listed impairment. Id.

At step four of the sequential evaluation process the administrative law judge found that Markardt could not perform her prior relevant heavy and medium work as a housekeeper and retail manager but that she had the ability to engage in a limited range of sedentary work. Tr. 13. The ALJ found that Markardt could stand and/or walk ten to fifteen minutes at a time and up to three hours cumulatively in an 8-hour workday and that she was able to sit the rest of the 8-hour workday with normal breaks. Id. In setting this residual functional capacity, the administrative law judge relied on the opinion of Dr. Potera who found that Markardt could engage in a limited range of light work but the ALJ gave Markardt the benefit of the doubt and reduced her capacity to the sedentary level. In addition, the ALJ found that Markardt's statements about her pain and functional limitations were not credible. Tr. 15.

Based on the above residual functional capacity and the testimony of a vocational expert the administrative law judge found that Markardt could perform sedentary work as an order clerk, appointment clerk and customer service representative, and that there were a significant number of such jobs in the Northeastern region of Pennsylvania. Tr. 17. Consequently, the administrative law judge denied Markardt's claim for disability insurance benefits. Id.

The administrative record in this case is 328 pages in length, primarily consisting of medical and vocational records. Markardt argues that the ALJ erred by rejecting the opinion of Dr.

17

Vessa. We have thoroughly reviewed the record in this case and find no merit in Markardt's argument. The administrative law judge did an excellent job of reviewing Markardt's vocational history and medical records in his decision. Tr. 10-18. Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 9, Brief of Defendant.

No treating or examining physician has indicated that Markardt suffers from physical functional limitations that would preclude her from engaging in the limited range of sedentary work set by the administrative law judge in his decision for the requisite statutory 12 month period. Dr. Vessa never provided such a functional assessment.

The Social Security regulations require that an applicant for disability benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. § 404.1512(c). Markardt failed to provide such evidence. Absent from the record is any evidence that Markardt suffered from physical functional limitations that would preclude her from engaging in the limited range of sedentary work set by the administrative law judge for the requisite statutory 12 month

period.[23]

The administrative law judge relied in part on the opinion of Dr. Potera, a state agency physician who examined Markardt. The administrative law judge's reliance on that opinion was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d. 356, 362 (3d Cir. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]").

We are satisfied that the administrative law judge appropriately took into account all of Markardt's physical limitations in the residual functional capacity assessment. The administrative law judge concluded that Markardt could engage in a limited range of sedentary work. That conclusion is supported by the opinion of the state agency physician.[24]

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

---

23. To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

24. If an individual can perform light work he or she can perform sedentary work. See n.9.

s/ James M. Munley
                              JAMES M. MUNLEY
                              United States District Judge


Dated: April   11, 2013